No. 19-55882
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RICHARD N. BELL,

              *Plaintiff-Appellant*,

v.

WILMOTT STORAGE SERVICES, LLC,

              *Defendant-Appellee*.

On Appeal from the United States District Court
for the Central District of California
No. 2:18-cv-07328-CBM-MRW
Hon. Consuelo B. Marshall, United States District Judge

**EXCERPTS OF RECORD
VOLUME I OF II
(Pages 1 to 9)**

Ryan A. Hamilton, Esq.  
HAMILTON LAW LLC  
5125 S. Durango, Suite C  
Las Vegas, Nevada 89113  
(702) 818-1818  
ryan@hamlegal.com  

Gregory Keenan  
DIGITAL JUSTICE FOUNDATION  
81 Stewart Street  
Floral Park, New York 11001  
(516) 633-2633  
gregory@digitaljusticefoundation.org  

*Attorneys for Appellant Richard Bell*

# INDEX OF CONTENTS

### VOLUME I OF II
### (Pages 1 to 9)

| ECF | Description | Page |
|---|---|---|
| 55 | [2019-07-01] Order Granting Summary Judgment | ER 1 |

### VOLUME II OF II
### (Pages 10 to 125)

| ECF | Description | Page |
|---|---|---|
| 71 | [2019-09-12] Judgment | ER 10 |
| 60 | [2019-07-30] Notice of Appeal | ER 11 |
| 49-1 | [2019-05-14] Supplemental Supnik Declaration | ER 22 |
| 43-1 | [2019-04-26] Goeson Declaration | ER 28 |
| 43-2 | [2019-04-26] Tullo Declaration with Exhibits | ER 34 |
| 43-3 | [2019-04-26] Supnik Declaration with Exhibits | ER 43 |
| 42-1 | [2019-04-26] Excerpts of Wilmott Summary-Judgment Brief | ER 60 |
| 36 | [2019-03-15] First Amended Answer | ER 68 |
| 34 | [2019-03-12] First Amended Complaint | ER 79 |
| 29-1 | [2019-03-08] Exhibit A: Bell Declaration | ER 89 |
| 29-2 | [2019-03-08] Exhibit B: Copyrighted Photo | ER 95 |
| 29-3 | [2019-03-08] Exhibit C: Photo Licensing Records | ER 97 |

| | | |
|---|---|---|
| 29-4 | [2019-03-08] Exhibit D: Copyright Registration | ER 99 |
| 29-5 | [2019-03-08] Exhibit E: Infringing Photograph | ER 101 |
| 29-6 | [2019-03-08] Exhibit F: Index of Image Files | ER 103 |
| 29-7 | [2019-03-08] Exhibit G: Demand Letter | ER 105 |
| 29-8 | [2019-03-08] Exhibit H: Infringing Photograph | ER 110 |
| 29-9 | [2019-03-08] Exhibit I: VisitUSA Website | ER 112 |
| 29-10 | [2019-03-08] Exhibit J: Hamilton Declaration | ER 116 |
| | [As of 2019-11-08] District Court Docket Sheet | ER 119 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD N. BELL<br><br>    Plaintiff,<br><br>vs.<br><br>WILMOTT STORAGE SERVICES, LLC and IADVANTAGE, LLC.<br><br>    Defendants. | Case No.: CV 18-7328-CBM-MRWx<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 29, 42]** |

The matters before the Court are: (1) Plaintiff Richard N. Bell's ("Plaintiff") Motion for Summary Judgment on Defendant Wilmott Storage Services, LLC's Liability for Copyright Infringement (Dkt. No. 29); and (2) Defendant Wilmott Storage Services, LLC's ("Wilmott") Motion for Summary Judgment (Dkt. No. 42).[1]

**I.    BACKGROUND**

This lawsuit arises from Wilmott's alleged infringement of Plaintiff's copyrighted photograph of the Indianapolis skyline ("Indianapolis Photograph"). (Dkt. No. 34, First Amended Complaint ("FAC") ¶ 8; Ex. B.)  Plaintiff, a

---

[1] To date, Wilmott's co-defendant IAdvantage, LLC has neither answered Plaintiff's FAC nor joined Wilmott's Motion for Summary Judgment.

1

professional photographer and retired attorney, took the Indianapolis Photograph in March of 2000.  (FAC ¶¶ 1, 8.)  On August 4, 2011, Plaintiff registered the Indianapolis Photograph with the United States Copyright Office.  (Bell Decl. ¶ 8.)  The United States Copyright Office issued Plaintiff a certificate of registration, Registration No. VA 1-785-115, with an effective date of registration of August 4, 2011 and the date of first publication of August 29, 2000.  (*Id.* ¶ 8, Ex. D.)  Thereafter, Plaintiff began licensing digital downloads of the Indianapolis Photograph through "Webshots" and his personal website.  (*Id.* ¶ 7, Ex. C.)

On April 5, 2018, using Google Images, Plaintiff discovered the Indianapolis Photograph on Wilmott's web server, accessible at the URL http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg.  (*Id.*, Ex. E.)  Plaintiff declares that Wilmott's website did not credit Plaintiff as the photographer or otherwise disclose the true source of the Indianapolis Photograph.  (*Id.* ¶ 11.)  Plaintiff further declares that the website necessarily implied that Wilmott owned the copyright in the Indianapolis Photograph by displaying the notice "Copyright © 2014 Visit USA. All Rights Reserved" on its site.  (*Id.*)  It is undisputed that Plaintiff never licensed or otherwise gave permission to Wilmott to use the Indianapolis Photograph.  (*Id.* ¶ 15.)

Upon discovering the unauthorized presence of the Indianapolis Photograph, Plaintiff viewed the index of images on Wilmott's server to determine how long it had been there.  (*Id.* ¶ 17.)  The index shows that a file titled "park_yyy.jpg," which Plaintiff declares is the same photograph (*id.* ¶ 18), was last modified on December 23, 2014, as were all other files in the same location (*id.* ¶ 19, Ex. F).  Thus, according to Plaintiff, Wilmott must have infringed his reproduction, distribution, and display rights in the Indianapolis Photograph as of December 23, 2014 by displaying the photograph on Wilmott's website.

According to Wilmott, there is no evidence that the Indianapolis Photograph appeared on a webpage of its website.  (Dkt. No. 37-2, Declaration of Jonathan

1   Tullo ("Tullo Decl.") ¶¶ 5-10.)  Rather, Wilmott maintains that the evidence only
2   shows that the photograph resided on its website server as a dormant ".jpg" file as
3   of December 24, 2014.  (Dkt. No. 37-1, Declaration of Jeffrey Goeson ("Goeson
4   Decl.") ¶¶ 7, 10.)  Wilmott explains that the only place where there was access to
5   the Indianapolis Photograph was through the pinpoint URL, either
6   http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg or
7   http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy.jpg.
8   (Goeson Decl. ¶¶ 8-11.)  Wilmott further explains that because Google never
9   indexed the Indianapolis Photograph, the public could only access the image if
10  they knew the exact pinpoint URLs above or if they already had a digital copy of
11  the image upon conducting an image search.  (Tullo Decl. ¶¶ 6-10; Goeson Decl.
12  ¶¶ 9-11.)
13       Although it is undisputed the Indianapolis Photograph resided on Wilmott's
14  website server, Wilmott moves for summary judgment arguing that it cannot be
15  held liable for copyright infringement as its use was *de minimis* as a matter of law.
16  (Dkt. No. 47 at 9-12.)

## II.   LEGAL STANDARD

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" only if it might affect the outcome

3

of the suit under governing law. *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).

### III. DISCUSSION

Wilmott does not dispute that the Indianapolis Photograph was copied onto its webserver. Instead, Wilmott argues that there is no evidence that the Indianapolis Photograph appeared on a webpage of its website, and thus, the mere copying of the photograph to the server was *de minimis* and not actionable under the Copyright Act.

The Ninth Circuit has explained the concept of *de minimis* copying under the Copyright Act as follows: "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement.... This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." *Newton v. Diamond*, 388 F.3d 1189, 1192–1193 (9th Cir. 2004) (citing *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74-75 (2d Cir. 1997). A use is *de minimis* and therefore not "substantial" enough to be actionable "only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Newton*, 388 F.3d at 1193 (quoting *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986)). In making this determination, courts must consider both the quantitative and qualitative

significance of the copied portion relative to the plaintiff's work as a whole. *Id*. at 1195.

Plaintiff argues that Wilmott's copying cannot be *de minimis* as a matter of law because Wilmott copied the entire Indianapolis Photograph onto its server and, thus, "there is no question that the average audience member[2] would recognize Wilmott's appropriation" of the photograph. (Dkt. No. 47 at 4-5.) However, the cases discussing *de minimis* use also focus on the substantial or insubstantial "use" of the copyrighted material. *See Newton*, 388 F.3d 1189, 1192–1193 ("For an unauthorized *use* of a copyrighted work to be actionable, the *use* must be significant enough to constitute infringement.") (emphasis added). Wilmott argues that the evidence only shows that the Indianapolis Photograph resided as a dormant ".jpg" file on its webserver and that there is no evidence that the photograph appeared on its website. As such, Wilmott contends that its "use" was so qualitatively insignificant that its infringement is not actionable.[3] In support, Wilmott relies primarily on the Second Circuit's decision in *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*, 668 F.2d 699, 703 (2d Cir. 1982).

In *Knickerbocker*, the plaintiff toy company sued its competitor for copyright infringement based on the use of a copyrighted photograph of plaintiff's toy car on a promotional "blister" card. *Id*. at 701. There, while the blister card featured copy related to defendant's product, it also featured the copyrighted

---

[2] It is unclear what "audience" Plaintiff is referring to by this assertion. Based on the evidence before the Court, Wilmott's only audience was the audience of its website, and there is no evidence that this audience would have seen any portion of Plaintiff's picture, let alone enough of the picture to recognize it.

[3] Indeed, given the undisputed evidence that Wilmott never knew the Photograph was on the webserver (Dkt. No. 37-2, Tullo Decl. ¶ 4), and its belief that the photograph must have existed on the server at the time Wilmott acquired it in 2012 (*id.* ¶ 8), to say that Wilmott "used" the Photograph at all seems to stretch the term "use" beyond its limits.

5

photograph of plaintiff's toy car. *Id.* at 702. The plaintiff only learned of the alleged infringement on the blister card through litigation discovery. *Id.* The defendant explained that the allegedly infringing blister card was "simply a sample which [defendant] had produced in order to position the artwork, and that a totally different illustration would be used for the production run of the card." *Id.* The district court dismissed plaintiff's copyright claim, finding that the blister card "was only an office copy which was never used." *Id.* The Second Circuit affirmed, holding that "the copyright claim with respect to the blister card falls squarely within the principle of *de minimis non curat lex*." *Id.* at 703.

The Court agrees with Wilmott that the Indianapolis Photograph merely existing as a dormant resource file on its webserver, without probative evidence that it was displayed on a webpage of its website, is analogous to the infringing blister card merely being used as an office copy in *Knickerbocker*.[4] The Court finds the distinction between a photograph appearing on a webpage and a photograph residing on a webserver to be significant. In *Perfect 10, Inc. v. Amazon.com, Inc.*, the Ninth Circuit adopted the "server test," which provides that "a computer owner that stores an image as electronic information *and serves the electronic information directly to the user* … is displaying the electronic information in violation of a copyright holder's exclusive display right." 508 F.3d 1146, 1159 (9th Cir. 2007) (emphasis added).

While it is undisputed that Wilmott stored the Indianapolis Photograph on its webserver, there is no evidence that Wilmott communicated the photograph to any end user other than Plaintiff (but that communication was initiated by Plaintiff himself, who has the right to authorize display of the Photograph). Indeed, it is undisputed that Google never indexed the photograph (Goeson Decl. ¶ 4), and that

---

[4] Indeed, the alleged infringement in this case is even less substantial than in *Knickerbocker*, since Wilmott—having no idea the Photograph was on its server (Tullo Decl. ¶ 4)—did not even make *internal* use of the Photograph.

6

1   members of the public could only locate the Indianapolis Photograph if (1) they
2   already had a digital copy of the photograph upon conducting an image search or
3   (2) they happened to type into their browsers the exact pinpoint URLs
4   http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg or
5   http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy.jpg.  (Tullo
6   Decl. ¶¶ 6-10; Goeson Decl. ¶¶ 8-11.)  Further, Wilmott's expert declares that the
7   "park_yyy.jpg" file was damaged, and therefore, would not have been used on a
8   webpage because it could not be viewable.  (Goeson Decl. ¶ 10.)  Plaintiff has not
9   provided any evidence that any member of the public saw the Indianapolis
10  Photograph on a webpage of Wilmott's website.  As Wilmott's expert explains, "if
11  a webpage does not instruct the server to place an image on the webpage, it simply
12  stays dormant on the server."  (Goeson Decl. ¶¶ 8-9.)  Therefore, like the office
13  copy in *Knickerbocker*, the undisputed evidence supports Wilmott's position that
14  the Indianapolis Photograph was never seen by anyone other than Plaintiff, and
15  thus, Wilmott's infringement is not actionable.
16          To prove Wilmott infringed his "display" right, Plaintiff submits a
17  screenshot of the purported webpage containing the Indianapolis Photograph,
18  which has the URL "http://www.visitusa.com/images/states
19  /alabama/cities/mobile/park.jpg." (Bell Decl. ¶ 9, Ex. E.)  Plaintiff's contention
20  that this evidence proves Wilmott "displayed" the photograph on a webpage
21  apparently reflects Plaintiff's misunderstanding of the terms "webpage" and
22  "website."  Exhibit E does not show a URL for a webpage or a website, but rather
23  a URL for an image resource file.  An image resource file is only considered part
24  of a website or webpage if it is related to a hypertext file from the site. *See, e.g.*,
25  American Heritage Dictionary (5th ed. 2019) (defining "webpage" as "[a]
26  document on the World Wide Web, consisting of a *hypertext file* and any *related*
27  *files* for scripts and graphics") (emphasis added); *id.* (defining a "website" as "[a]
28  set of interconnected *webpages*") (emphasis added).  Plaintiff has not identified

1  any hypertext file to which the copyrighted photograph relates, so it is inaccurate
2  to refer to Exhibit E as proving the photograph was "displayed" on a "webpage"
3  or part of a "website."  Even when construed in the light most favorable to
4  Plaintiff, Exhibit E shows nothing more than what Wilmott already concedes: that
5  the Indianapolis Photograph was present on Wilmott's webserver, accessible to
6  those who already have a digital copy of the Photograph.

7  Summary judgment on *de minimis* use is appropriate where the undisputed
8  facts show that the copying was not significant enough to constitute infringement.
9  *See Newton*, 388 F.3d at 1196.  The Court finds the Ninth Circuit's most recent
10 decision on this issue, *Design Data Corp. v. Unigate Enter., Inc.*, 847 F.3d 1169
11 (9th Cir. 2017), instructive.  In *Design Data*, the Ninth Circuit reversed the district
12 court's finding of *de minimis* use, holding that "the evidence raise[d] a material
13 question of fact precluding summary judgment on the unauthorized download
14 claim."  847 F.3d at 1172.  There, the defendant claimed that it downloaded a "free
15 demo" of the copyrighted software, was unaware that the copy it downloaded was
16 unauthorized, and that it did not actually use the software.  *Id*.  However, there
17 was also evidence showing that the plaintiff did not make "free demos" of the
18 software available for download, that defendant intentionally downloaded a
19 complete copy of the software, and that defendant possessed three "patch files"
20 allowing circumvention of the software's licensing requirement.  *Id*.  In addition,
21 the defendant's computers contained files generated by the software and
22 defendant's website advertised that it used the software.  *Id*.  The Ninth Circuit
23 concluded that "this evidence raised a factual question whether [defendant's]
24 download was more than an 'insignificant violation [ ]' of [plaintiff's] copyright."
25 *Id*. (citing *Ringgold*, 126 F.3d at 74).
26 Unlike the defendant in *Design Data*, here, Wilmott was unaware that the
27 Indianapolis Photograph resided on its webserver before Plaintiff contacted it on
28 April 7, 2018.  (Tullo Decl. ¶ 4.)  Moreover, Wilmott did not "display" the

photograph on a webpage of its website and there is no evidence that Wilmott otherwise "used" the photograph.  As such, the evidence before the Court fails to raise a material question of fact that would preclude summary judgment.  The Court finds that the copy of the Indianapolis Photograph residing on Wilmott's webserver—absent any evidence that Wilmott otherwise reproduced, distributed, or displayed the photograph—amounts to at most a *de minimis*, "technical" violation that is not actionable as a matter of law.  Therefore, the Court **GRANTS** Wilmott's motion for summary judgment on its *de minimis* use defense.[5]

### IV.   CONCLUSION

Accordingly, the Court **GRANTS** Wilmott's motion for summary judgment on its *de minimis* use defense.  The Court **DENIES** Plaintiff's motion for summary judgment on Wilmott's liability because Wilmott's infringement is not actionable.

**IT IS SO ORDERED.**

DATED: July 1, 2019

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[5] In its motion, Wilmott alternatively moved for summary judgment on its statute of limitations and fair use defenses.  Because the Court concludes that Wilmott prevails on its *de minimis* use defense, the Court does not address Wilmott's additional arguments.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing EXCERPTS OF RECORD: VOLUME I with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: December 9, 2019       Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Richard Bell*